**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

TYLER WALZ, STEPHEN STACY a/k/a
STEVE STACY, FORREST BAYLESS,
MARCUS CALDERON, DANNY MARR,
Each Individually And On Behalf Of All
Other Persons Similarly Situated,

                              Plaintiffs,

                -against-

44 & X incorporated as 10TH AVENUE
GROUP, INC., SCOTT HART, Individually,
and BRUCE HOROWYTZ a/k/a BRUCE
HOROWITZ, Individually,

                         Defendants.

-----------------------------------------------------------------x

Civ. No.:  12 CV 5800 (CM)(AJP)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER FED. R.
CIV. P. 23**

JACKSON LEWIS LLP
666 Third Avenue
New York, New York 10017
(212) 545-4000
Felice B. Ekelman
Joanna S. Smith

ATTORNEYS FOR DEFENDANTS
44 & X, SCOTT HART AND BRUCE
HOROWYTZ

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...............................................................................ii - iv

PRELIMINARY STATEMENT .......................................................................... 1

PROCEDURAL HISTORY.................................................................................. 2

STATEMENT OF FACTS .................................................................................. 3

ARGUMENT

PLAINTIFFS' NYLL CLAIMS SHOULD NOT BE CERTIFIED AS A
CLASS ACTION BECAUSE PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF
FED. R. CIV. P. 23.............................................................................................. 9

**I.  PLAINTIFFS CANNOT SATISFY THREE OF THE ELEMENTS OF RULE
23(A).** .................................................................................................... 12

A. Plaintiffs Cannot Satisfy The Commonality Requirement of Rule 23(a).... 12

B. Plaintiffs Cannot Satisfy The Typicality Requirement of Rule 23(a). ........ 14

C. The Named Plaintiffs Will Not Fairly And Adequately Protect The
Interests Of The Class. .............................................................. 18

D. Plaintiffs' Counsel Is Not Appropriate Class Counsel . .............................. 20

**II.  PLAINTIFFS CANNOT SATISFY THE MORE RIGOROUS
REQUIREMENTS OF RULE 23(B)(3).** ................................................ 21

A. Individual Questions Predominate Over Common Issues........................... 22

B. The Proposed Class Action Is Not Superior To Individual Actions........... 24

**III.  PLAINTIFFS FAIL TO PROPOSE A CLASS NOTICE.** ................................. 25

CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                               **PAGE(S)**

Alcantara v. CNA Mgmt.,
    264 F.R.D. 61 (S.D.N.Y. 2009) ............................................................................20

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000) ..............18, 19

Comcast Corp. v. Behrend,
    569 U.S. __ 2013, 2013 U.S. LEXIS 2544 (Mar. 27, 2013)........................................... passim

Daniels v. Amerco,
    No. 81 Civ. 3801 (RLC), 1983 U.S. Dist. LEXIS 18670 (S.D.N.Y. Mar. 10, 1983) ..............14

Dunnigan v. Metropolitan Life Ins. Co., 214 F.R.D. 125 (S.D.N.Y. 2003)
    214 F.R.D. 125 (S.D.N.Y. 2003) ................................................................22, 24, 25

Gardner v. Western Beef Properties, Inc.,
    07-CV-2345 (RJD)(JMA), 2011 U.S. Dist. LEXIS 146467 (E.D.N.Y. Sep. 26, 2011) .........22

Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    903 F.2d 176 (2d Cir. N.Y. 1990)........................................................................19

General Telephone Co. of the Southwest v. Falcon,
    457 U.S. 147 (1982)........................................................................................14

Hamm v. TBC Corp.,
    345 Fed. Appx. 406 (11th Cir. Fla. 2009)...............................................................20

Myers v. Hertz Corp.,
    624 F.3d 537 (2d Cir. 2010)..................................................................9, 10, 11, 22

RBS Citizens, N.A. v. Ross,
    No. 12-165, 2013 U.S. LEXIS 2640 (Apr. 1, 2013) ..................................................11, 23, 24

RBS Citizens, N.A. v. Ross,
    557 F.3d 900 (7th Cir. 2012) ...............................................................................23

Roach v. T.L. Cannon Corp.,
    2013 U.S. Dist. LEXIS 45373 (N.D.N.Y. Mar. 29, 2013)...........................................22, 23

Romero v. H.B. Automotive Group, Inc.,
    No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012)...................13

Ross v. RBS Citizens,
    2010 U.S. Dist. LEXIS 107779 (N.D. Ill. Oct. 8, 2010)..............................................23

Shayler v . Midtown Investigations, Ltd.,
    12 Civ. 4685 (KBF), 2013 U.S. Dist. LEXIS 29540 (S.D.N.Y. Feb. 27, 2012)...................9 24

The Brd. Of Trustees of the So. Cal. IBEW-NECA Defined Contribution Plan v. The
    Bank of New York Mellon Corporation,  09 Civ. 6273 (RMB)(AJP), 2012 U.S. Dist.
    LEXIS 121711 (S.D.N.Y. Aug. 16, 2012, ...........................................................................25

Tiro v. Public House Investments, LLC,
    11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2012 U.S. Dist. LEXIS 173311 (S.D.N.Y.
    Dec. 4, 2012)......................................................................................................................10

Trawinski v. KPMG LLP,
    11 Civ. 2978 (PAC), 2012 U.S. Dist. LEXIS 183366 (S.D.N.Y. Dec. 21, 2012) .......... passim

Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541 (2011).......................................................................................................1, 9

STATUTES

New York Labor Law ("NYLL") ......................................................................................... passim

OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 .................................................................................... passim

Rule 7.3 of the New York Rules of Professional Conduct ..........................................................20

## PRELIMINARY STATEMENT

Defendants 44 & X incorporated as Tenth Avenue Group, Inc. ("44&X"), Scott Hart ("Hart") and Bruce Horowytz ("Horowytz," collectively hereinafter "Defendants") submit this Memorandum Of Law in Opposition to Plaintiffs Tyler Walz ("Walz"), Stephen Stacy ("Stacy"), Marcus Calderon ("Calderon"), Danny Marr ("Marr") and Forrest Bayless's ("Bayless") (collectively hereinafter "Plaintiffs") Motion to certify their New York Labor Law ("NYLL") claims for unpaid wages and overtime compensation as a class action pursuant to Federal Rule of Civil Procedure 23.  Plaintiffs seek to certify a class of all waiters and bartenders employed by 44&X during the six years immediately preceding the initiation of the lawsuit ("Plaintiffs' Motion").

Plaintiffs' Motion is wholly deficient.   Plaintiffs' Motion lists the Rule 23(a) and 23(b)(3) requirements for class certification and proposes a list of common questions Plaintiffs assert affect the entire proposed class.  Plaintiffs spend the majority of their memorandum of law arguing that class certification under Rule 23 is justified due to claimed deficiencies in connection with the dissemination of Notice pursuant to §216(b) of the Fair Labor Standards Act ("FLSA").   Such an argument is not relevant to the determination of whether a class action is appropriate for NYLL claims and should be disregarded.

Plaintiffs have not met their burden for establishing commonality, typicality or adequacy of representation under Rule 23(a), especially in light of the Supreme Court's landmark ruling of Wal-Mart Stores, Inc. v. Dukes, a case which is not even mentioned in Plaintiffs' papers.  131 S. Ct. 2541, 2550 (2011).   Further, in light of the Supreme Court's recent decision in Comcast Corp. v. Behrend, Plaintiffs cannot as a matter of law establish that damages are capable of classwide resolution and accordingly will not be able to establish predominance under Rule 23(b)(3).  569 U.S. __ 2013, 2013 U.S. LEXIS 2544 (Mar. 27, 2013).

In light of the individualized nature of each member of the putative class's potential claims, Plaintiffs' Motion should be denied.

## PROCEDURAL HISTORY

Plaintiffs Walz and Stacy filed their original Complaint on July 27, 2012, on behalf of themselves and others who they purport to be similarly situated.  Pursuant to this Court's Order, dated November 7, 2012, Plaintiffs moved to amend their Complaint to add Calderon, Marr and Bayless as Named Plaintiffs.   Plaintiffs claim in their Proposed First Amended Class and Collective Action Complaint,  Docket No. 31-1 (the "Proposed Amended Complaint") that from July 2006 until late 2009 Defendants failed to pay many bartenders and servers their hourly wages and appropriate overtime compensation for all hours worked over 40. Additionally, Plaintiffs claim that they were required to attend mandatory, unpaid staff meetings which they allege occurred once every two weeks and lasted for 2.5 hours.  Plaintiffs also claim that Defendant Hart stole the cash tips from Plaintiffs and that they were not paid for "gap hours," which they define as the hour between a double shift.   Finally, Plaintiffs allege Defendants retaliated against Walz in response to Plaintiffs' filing of this lawsuit.[1]

On February 18, 2013, Plaintiffs filed the instant Motion for class certification. Defendants had previously informed Plaintiffs that they would not contest the numerosity requirement for class certification under Rule 23(a).  On February 19, 2013, the parties executed a Stipulation to Stay Litigation and Propose Settlement Conference, which was So Ordered by

---

[1] Notices pursuant to Section 216(b) of the FLSA were distributed to former and current bartenders and waiters on January 4, 2013.   As of this date, only three individuals, Stephen Reese Scelfo, John Hoffman, and Kameron Ackerman, have filed consents to opt into this litigation (Docket Nos. 64, 69 and 70). These consents should be stricken because they were filed after the time to do so expired, and because all three individuals did not work for 44&X during the applicable time period for FLSA claims, nor were they included on any of the lists of individuals to receive the notice.

this Court on February 19, 2013.  (Docket No. 61).  On April 1, 2013, Plaintiffs cancelled the scheduled settlement conference and the parties resumed litigation of the instant case.

At the parties' April 11, 2013 conference with the Court, the Court granted Plaintiffs leave to file an Amended Complaint.  However, the Court ruled that any amendment would be futile to the extent it alleges a claim for retaliation on behalf of any Plaintiff besides for Walz.  Likewise, the Court ruled that any amendment claiming retaliation by Horowytz would be futile.  To date, Plaintiffs have not filed the Amended Complaint.

## STATEMENT OF FACTS

Defendants Hart and Horowytz own and operate a small restaurant, 44&X, which seats 68 people, including bar stools. Defendants Hart and Horowytz are the sole owners and restaurant managers.  Prior to October 2009, 44&X paid their waiters and bartenders in two different ways.  44&X  paid some waiters and bartenders shift pay for each shift worked.  (See Declaration of David Greczek ("Greczek Decl."), attached to the Declaration of Felice B. Ekelman ("Ekelman Decl.") as Exhibit "A;" Declaration of Ryan Ooverge ("Ooverge Decl."), attached to the Ekelman Decl. as Exhibit "B;" Declaration of Ray Scott ("Scott Decl."), attached to the Ekelman Decl. as Exhibit "C;"  Declaration of Kious Jordan Kelly ("Kelly Decl."), attached to the Ekelman Decl. as Exhibit "D").  Defendants Hart and Horowytz would often pay more than the minimum tip credit rate of pay for shifts in which tip earnings were low. Id. (Ooverge Decl. at ¶ 6; Kelly Decl. at ¶ 11).  Other servers and bartenders were paid an hourly wage at the tip credit rate and received paychecks each week. (See Greczek Decl. at ¶9, Ooverge Decl. at ¶8).  Plaintiffs allege they were not paid any wage at all prior to November or December 2009 and earned only tips.  (Proposed Amended Complaint, ¶38).

As of about October 2009, all servers and bartenders were paid at the tip credit hourly rate for all hours worked and overtime at the appropriate hourly rate.  (Scott Decl. at ¶5,

3

Proposed Amended Complaint, ¶¶ 61, 81, 94, 109; Transcript of the December 18, 2012 Deposition of Daniel Marr ("Marr Tr.") 127-28), cited pages of which are attached to the Ekelman Decl. as Exhibit "E").

### A.   Plaintiff Walz

In January of 2010, Walz filed a complaint with the Department of Labor claiming unpaid wages under the FLSA and the NYLL for a period covering August 1, 2005 through October 1, 2009.  (See Tyler Walz Authorization for Wage Resolution ("Walz Wage Resolution"), attached to the Ekelman Decl. as Exhibit "F").  Prior to his filing the complaint, Walz had requested to be paid shift pay.  (See Ovcrverge Decl. at ¶21).  As a result of the Department of Labor investigation, Walz settled his claims for the period up to and including October 1, 2009.  Walz further signed an authorization stating "I understand upon my receipt of the sum indicated above, all matters pertaining to payment of unpaid wages and/or supplements, within the period of this claim are fully resolved." See Walz Wage Resolution.

The Proposed Amended Complaint specifically asserts Walz has no claim for unpaid wages or overtime. (Proposed Amended Complaint, ¶66). Walz claims he is owed unpaid "gap hours" only during the same alleged time period where he was not paid wages. (Id. at  ¶71). However,  Walz's Wage Resolution clearly states that all wage claims have been satisfied through October 2009.   Accordingly, Walz has no viable claim for unpaid wages, overtime, "gap hours" or unpaid staff meetings through October 2009.  (Proposed Amended Complaint, ¶71, 75).

On July 14, 2012 Plaintiff Walz's employment was terminated.  (Proposed Amended Complaint, ¶57).  Walz claims his termination was in retaliation for making a complaint regarding unpaid wages.  (Proposed Amended Complaint, ¶ 53).  Plaintiff Walz is the

only Plaintiff who asserts a claim for retaliatory discharge.  (See Plaintiffs' Reply Memorandum of Law in Support of Motion to Amend the Complaint at p. 2, Docket No. 47, admitting none of the other Plaintiffs have made allegations of retaliation).  In light of the Walz Wage Resolution extinguishing claims for minimum wage and overtime pay, Walz's claims in this lawsuit (unlike any other Plaintiff or putative class member's claims) relate primarily to his termination from employment.

### B.      Plaintiff Stacy

Plaintiff Stacy alleges he was not paid for regular or overtime hours worked from March 2008 through November 2011.  (Proposed Amended Complaint, ¶ 87).  Stacy also claims he was not paid for time spent in meetings.  (Proposed Amended Complaint, ¶¶ 89).  Plaintiff Stacy does not assert specific factual allegations regarding personal "gap hours" compensation allegedly owed.  Plaintiff Stacy's employment with 44&X ended in September 2011.  (Proposed Amended Complaint, ¶ 78).

### C.      Plaintiff Bayless

Plaintiff Bayless' employment with 44&X began in February 2010 and ended in November 2010.  (Proposed Amended Complaint, ¶ 104).  Bayless does not assert claims for unpaid hourly wages or overtime.  Bayless asserts a claim for unpaid wages for "gap hours"  and for attending allegedly unpaid mandatory staff meetings.  (Proposed Amended Complaint, ¶¶ 105-06).  Bayless is the only Named Plaintiff to assert a claim for "gap hours" for the period after November/December 2009.

### D.      Plaintiff Marr

Plaintiff Marr was deposed on December 18, 2012.  Marr was employed from February 2009 until July 2010.  (Marr Tr. 21, 41).  Plaintiff Marr's testimony was inconsistent

with the allegations in the Proposed Amended Complaint.  For example, he testified that he usually worked approximately 28 to 30 hours a week (2 evening shifts of approximately 8.5 hours, 1 brunch and 1 lunch shift, each approximately 5.5 hours). (Marr Tr. 40, 87-89).  The Proposed Amended Complaint alleges that Marr worked 39.5 hours a week.  (Proposed Amended Complaint, ¶¶ 110, 112).  While the Proposed Amended Complaint alleges Marr is owed "gap time" compensation (Proposed Amended Complaint, ¶ 116),  Marr testified that when he worked lunch and dinner shifts on the same day, he received a break between the shifts during which he left the restaurant and did not perform any work.  (Marr Tr. 78-79).  Thus, Marr's testimony establishes that he does not have a "gap time" claim.

Further, Marr testified he was paid for all hours that appeared on his time card, and that he was paid at the tip credit hourly rate.  (Marr Tr. 17-18, 128-29).  Marr testified that he attended training meetings on more than three and "maybe" more than five occasions, with each meeting lasting approximately one hour. (Marr Tr. 72-73).  During his deposition Marr thus confirmed that the allegation in the Proposed Amended Complaint that he was required to attend approximately eight, two-and-a-half hour meetings is incorrect.  (Proposed Amended Complaint, ¶ 114).

Plaintiffs allege that Defendant Hart "stole tips" from them.  (Proposed Amended Complaint, ¶ 50).  However, Marr testified that he never saw Defendants steal anyone's tips, that Defendants never stole his tips and that he was not aware of an instance where Defendants stole anyone's tips.  (Marr Tr. 84-85).  Former and current employees' accounts are consistent with Marr's testimony: other employees confirm that neither Hart nor Horowytz ever took tips from anyone, nor had anything to do with the tip pool.  (Greczek Decl. at ¶18, Oververge Decl. at ¶18, Scott Decl at ¶¶11-12, and Kelly Decl. at ¶¶15, 21).   Marr testified that the bartenders and

6

waiters at 44&X control the tip pool, and management is not involved in apportioning tips between workers.  (Marr Tr. 30-32).  The tip pool always has been staff-run.  (Greczek Decl. at ¶¶11, 18, Ovververge Decl. at ¶14, Scott Decl. at ¶¶6-11, and Kelly Decl. at ¶¶12-20; Marr Tr. 30-32).  Bartenders collect the tips earned by the wait staff over the course of an evening and the head waiter and bartender on shift determine the allocation of tips at the end of a shift based on a formula created and approved by the staff.  Id.  Bartenders keep all of the tips left by patrons at the bar, and receive a portion of the tips collected by the waiters.  (Greczek Decl. at ¶¶16, 19, Ovververge Decl. at ¶¶12, 15, Scott Decl. at ¶¶6, 8, and Kelly Decl. at ¶¶16, 17; Marr Dep. Tr. 30-32).  44&X's managers do not touch the pool or the tips earned by staff.  (Greczek Decl. at ¶¶11, 18, Ovververge Decl. at ¶14, Scott Decl. at ¶¶6-11, and Kelly Decl. at ¶¶12-20).

### E.    Plaintiff Calderon

Plaintiff Calderon alleges he was employed by Defendants from June 2009 through June 2010. (Proposed Amended Complaint ¶ 92).

Plaintiff Calderon was deposed on April 10, 2013.  (Cited pages from the Calderon deposition transcript are attached to the Ekelman Decl. as Ex. "G").  As was the case with Plaintiff Marr, Plaintiff Calderon's testimony was inconsistent with the allegations in the Proposed Amended Complaint and in the Affidavit he submitted earlier in this lawsuit (Docket No. 39).  For instance, Calderon claims in the Proposed Amended Complaint (¶ 95) and in his Affidavit (¶ 17) that he regularly worked "significantly in excess of forty hours a week," but acknowledged at his deposition that he rarely worked overtime and he could not recall any occasion when he worked more than 40 hours a week.  (Calderon Tr. 101, 118-119).  Further, Calderon claimed in the Proposed Amended Complaint (¶ 100) and in his Affidavit (¶ 20) that he was working on average fifty-seven (57) hours each week, but acknowledged at his deposition

that this was not the case.  (Calderon Tr. 100, "Yes, definitely looking over this stuff, it looks way too high").  In fact, Calderon conceded at deposition that the total number of hours for which he claimed he was unpaid in his Affidavit was incorrect.  (Calderon Tr. 109-110). Calderon also testified that his paychecks accurately reflected his tips, the number of shifts and which shifts he worked each week.  (Calderon Tr. 93-94).

The Proposed Amended Complaint alleges that he was not paid from June 2009 through November or December 2009.  (¶ 94).  However, during his deposition, Calderon testified he was paid shift pay for his bartender shifts and at least some of his shifts as a server. (Calderon Tr. 22, 27, 40-41).  Further, Calderon was paid an hourly rate from September 2009 and on. (Calderon Tr. 33, 64-65).

Calderon alleged in the Proposed Amended Complaint (¶ 101) and in his Affidavit (¶¶ 23-24) that he is owed compensation for a substantial number of "gap hours" when he was expected to work between shifts, but acknowledged at his deposition that on the days when he worked a double shift he often went home or out to eat during such time, or would enjoy a duty-free family meal in the restaurant between shifts.  (Calderon Tr. 49-50, 60-61, 103-104).   In addition, whereas in the Proposed Amended Complaint (¶ 102) and in his Affidavit (¶ 25) Calderon claimed that staff meetings typically lasted 2.5 hours, he acknowledged at his deposition that other than one meeting, staff meetings were typically a half hour.  (Calderon Tr. 104-106).

Calderon testified that no one took his tips (Calderon Tr. 27 ) and that he does not have a claim for unpaid tips. Calderon testified that a senior server or the bartender was always in charge of the tip pool and, significantly, and in contravention of the allegations in Plaintiffs'

Proposed Amended Complaint, that no one ever took his tips at any point during his employment

with 44&X.  (Calderon Tr. 27).

## ARGUMENT

### PLAINTIFFS' NYLL CLAIMS SHOULD NOT BE CERTIFIED AS A CLASS ACTION BECAUSE PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 23

Plaintiffs' Motion should be denied because it falls far short of the threshold set

by the U.S. Supreme Court for certification of a class action.  The U.S. Supreme Court has held

that:

> The class action is an exception to the usual rule that litigation is
> conducted by and on behalf of the individual named parties only.
> In order to justify a departure from that rule, a class representative
> must be part of the class and possess the same interest and suffer
> the same injury as the class members.

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (internal citations and quotation

omitted).  In the Second Circuit, "[t]he party seeking class certification bears the burden of

establishing by a preponderance of the evidence that each of Rule 23's requirements has been

met."  See Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (internal citations omitted);

see also Dukes, 131 S. Ct. at 2551 ("Rule 23 does not set forth a mere pleading standard. A party

seeking class certification must affirmatively demonstrate his compliance with the Rule …

certification is proper only if the trial court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23(a) have been satisfied."); see also Trawinski v. KPMG LLP, 11 Civ.

2978 (PAC), 2012 U.S. Dist. LEXIS 183366, at *14  (S.D.N.Y. Dec. 21, 2012) (holding that

each of Rule 23's requirements must be proven by a preponderance of the evidence "even where

a requirement overlaps with a merits issue in the case.") (internal citations omitted); Shayler v .

Midtown  Investigations,  Ltd., 12 Civ. 4685 (KBF), 2013 U.S. Dist. LEXIS 29540, at *9

9

(S.D.N.Y. Feb. 27, 2012) ("On a motion for class certification, the burden is at all times on the party proposing the class").

Pursuant to Rule 23, a proposed class action must (1) be sufficiently numerous that joinder of all parties is impracticable, (2) involve questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the proposed class, and (4) involve a class representative or representatives who adequately represent the interests of the class.  Dukes, 131 S. Ct. at 2548 citing to Fed. R. Civ. P. 23(a). "All four requirements must be met, and if even one of the *Rule 23(a)* requirements is not met, certification must be denied."  Tiro v. Public House Investments, LLC, 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2012 U.S. Dist. LEXIS 173311, at *13 (S.D.N.Y. Dec. 4, 2012).

Further, Rule 23(b)(3), which governs the class action proposed by Plaintiffs, mandates the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members and a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy."  Dukes, 131 S. Ct. at 2549 FN2 citing to Fed. R. Civ. P. 23(b).   The "predominance" requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Myers, 624 F.3d at 547 citing to Amchem Prods., Inc. v. Windsor, 521 U.S.591, 623 (1997).  In essence, the requirement is designed to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Myers, 624 F.3d at 547 citing to Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (alteration omitted) (quoting Amchem Prods., Inc., 521 U.S. at 615 (1997)).   Accordingly,  the

predominance requirement will be met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  Myers, 624 F.3d at 547 citing to Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

In a recent decision, the U.S. Supreme Court held that the requirements of Rule 23(b)(3) will not be met where "questions of individual damage calculations will inevitably overwhelm questions common to the class."  See Comcast Corp. v. Behrend, 569 U.S. __ 2013, 2013 U.S. LEXIS 2544 (Mar. 27, 2013).  Two days later, the district court in Roach v. T.L. Cannon Corp., applying Behrend, denied class certification in a wage and hour case brought under the NYLL as damages were likely to be highly individualized and incapable of measurement on a classwide basis.  2013 U.S. Dist. LEXIS 45373, at *9 (N.D.N.Y. Mar. 29, 2013).  Similarly, the U.S. Supreme Court also has indicated that it intended Behrend to apply to motions for class certification under Rule 23 in wage and hour cases, as on April 1, 2013, the Supreme Court remanded a wage and hour class action to the Seventh Circuit "for further consideration in light of Comcast Corp. v. Behrend."  RBS Citizens, N.A. v. Ross, No. 12-165, 2013 U.S. LEXIS 2640, at *1 (Apr. 1, 2013).

Pursuant to the U.S. Supreme Court's holdings and the law of this Circuit, Plaintiffs' Motion should be denied because Plaintiffs have made no showing to satisfy the evidentiary requirements of Rule 23.  Specifically, Plaintiffs cannot establish the requirements of Rule 23(a) because they cannot adequately represent the interests of the putative class and cannot demonstrate commonality or typicality.   Further, Plaintiffs cannot satisfy the more rigorous predominance requirements of Rule 23(b)(3).  Perhaps recognizing that they fail to satisfy the

requisite criteria for certification, Plaintiffs contend that the Court should certify their NYLL claims as a class action because the individuals who have received the Notice of Collective Action have not submitted Consents to Opt-In to this litigation.  Defendants respectfully submit that Plaintiffs' argument lacks any legal justification and their Motion should be denied.

## I.    PLAINTIFFS CANNOT SATISFY THREE OF THE ELEMENTS OF RULE 23(a).

Plaintiffs are unable to satisfy the commonality, typicality and/or adequacy requirements of Rule 23(a).  The record evidence dictates that Plaintiffs have little in common with one another or the putative class aside from the fact that at some point in time they worked for the same employer.

### A.    Plaintiffs Cannot Satisfy The Commonality Requirement of Rule 23(a).

Rule 23(a) requires plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." Dukes, 131 S. Ct. at 2551 (internal citations and quotation omitted).   Plaintiffs' claims must depend on a common contention and "[t]hat common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.   "Actual, not presumed, conformance with Rule 23(a) remains indispensable" and accordingly the rigorous analysis required by Rule 23(a) "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

Commonality "depends not so much on the raising of common questions as it does on the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation, where dissimilarities within the proposed class are what have the

12

potential to impede the generation of common answers." Trawinski, 2012 U.S. Dist. LEXIS 183366, at **15-16. "After Dukes, though, the fact that Plaitiff[s] came up with a list of common questions is no longer sufficient." Romero v. H.B. Automotive Group, Inc., No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151, *50 (S.D.N.Y. May 1, 2012) citing to Dukes 131 S. Ct. at 2551. Accordingly, in the instant case, Plaintiffs' list of allegedly "common questions" is insufficient to support certification under Rule 23(a). Further, Plaintiffs' conclusory statement that injuries suffered by plaintiffs resulted from the same practice or policy, without identifying the injurious practice or policy, is also insufficient. Dissimilarities amongst the Named Plaintiffs, as well as within the proposed class, will impede the generation of common answers and force several mini-trials, making class resolution inefficient.

   Plaintiffs have not and cannot present common answers or common proof that would support a classwide proceeding, as required by the holding in Dukes. Id. at *48-49. Plaintiffs worked at 44&X during different time periods and were subjected to different policies and practices. As described above, Plaintiffs seek relief pursuant to a variety of different theories and are atypical of one another. For instance, prior to 2009, Defendants did not employ one uniform policy for wage payment. To the contrary, Defendants' employees were either paid shift pay or the tip credit hourly wage for every hour worked. (Greczek Decl. at ¶¶ 8-9; Calderon Tr. 22, 27, 40-41). The shift pay would vary dependent on which shift was worked (dinner, brunch or later, lunch) and whether the employee was a bartender or server. (Greczek Decl. at ¶7, Oververge Decl. at ¶6, Scott Decl. at ¶4, Kelly Decl. at ¶¶10-11; Calderon Tr. 22, 27, 40-41). From 2009 and on, all employees were paid the tip credit hourly rate. Thus, Plaintiffs who were employed prior to the Fall of 2009 were not necessarily paid in the same way. Id. Staff meetings occurred relatively irregularly and at least some putative class members have

stated that they were paid for meetings they attended.  (Ververge Decl. at ¶ 23; Greczek Decl. at ¶ 21; Scott Decl. at ¶ 15; Calderon Tr. 50-51).  Further, claims regarding Plaintiffs' contention that Defendant Hart stole tips are likely to be highly individualized and not subject to common answers.  Marr and Calderon have testified that their tips were never stolen.  (Marr Tr. 84-85; Calderon Tr. 27).  Accordingly, Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement.

## B.      Plaintiffs Cannot Satisfy The Typicality Requirement of Rule 23(a).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The essence of Rule 23's typicality requirement is that the class representatives should have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."  Daniels v. Amerco, No. 81 Civ. 3801 (RLC), 1983 U.S. Dist. LEXIS 18670, at *13 (S.D.N.Y. Mar. 10, 1983).  Where commonality looks to the relationship between the class members, typicality seeks to ensure that the class representative's claims are sufficiently similar to the claims of the purported class.  General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 159 (1982).

> Because both commonality and typicality serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiffs claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence, they tend to merge into one another, such that similar considerations animate their analysis.

Trawinski, 2012 U.S. Dist. LEXIS 183366 at *14 (internal quotations and citations omitted); see also  Dukes, 131 S. Ct. at 2551 FN5.  "[C]ourts will deny class certification where the class representative is subject to a defense that would "pose an unacceptable risk of drawing attention away from the central issues in the litigation. … While the defendant need not show at the certification stage that the unique defense will prevail, the defendant must show that the claim is

'meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense.'" Trawinski v. KPMG LLP, 2012 U.S. Dist. LEXIS 183366, at **21-22 (S.D.N.Y. Dec. 21, 2012) (internal citations and quotations omitted).

The same issues that plague Plaintiffs' commonality argument above, militate against establishing typicality.  The Proposed Amended Complaint alleges claims for unpaid wages, overtime and "gap hours" predominantly during the period Plaintiffs claim ran from July 2006 through November or December 2009 — a  period during which some employees were paid shift pay and some were paid hourly.  Only the claims for unpaid staff meetings are alleged to occur after 2009.  Each Named Plaintiffs' claims are subject to unique defenses which would become the focus of the litigation should the class be certified.  Further, as described in greater detail below, the deposition testimony of those Plaintiffs who have been deposed thus far dictates that such individuals do not have claims which are typical of the allegations proffered in the Proposed Amended Complaint.  Accordingly, typicality is not satisfied under Rule 23(a).

*(a) Tyler Walz*

Walz filed a complaint with the Department of Labor claiming unpaid wages under the FLSA and the NYLL for a period covering August 1, 2005 through October 1, 2009. As a result of the Department of Labor investigation, Walz settled his claims for the period up to and including October 1, 2009.  Walz further signed an authorization stating "I understand upon my receipt of the sum indicated above, all matters pertaining to payment of unpaid wages and/or supplements, within the period of this claim are fully resolved."  See Ekelman Decl., Ex. "F." Accordingly, Walz has no claims for unpaid wages, overtime, "gap hours" and unpaid staff meetings through the time of his Wage Resolution, August 1, 2005 through October 1, 2009. Walz, himself, admits in the Proposed Amended Complaint that he has no claim for unpaid wages or overtime.  While he claims he is owed for unpaid "gap hours" during the alleged time

15

period where he was not paid wages,  Walz's Wage Resolution clearly states that all wage claims

have been satisfied for that time period.  Accordingly, the only claim Walz still potentially shares

with any proposed class is that for unpaid meetings and only those meetings which took place

from October 2, 2009 on.

Further, only Walz brings claims of retaliation, which would necessitate

individualized analysis and unique defenses as against Walz.  (See Plaintiffs' Reply

Memorandum of Law in Support of Motion to Amend the Complaint, Docket No. 47, admitting

none of the other Plaintiffs have made allegations of retaliation).  Accordingly, Walz cannot

establish that his claims are typical of the putative class.

(b) Steve Stacy

Stacy alleges he was not paid for the period from March 2008 through

November 2009.  He also alleges he is due compensation for work performed during "gap time"

hours prior to November 2009, and for time spent in meetings throughout his employment.

(c) Forrest Bayless

Bayless only worked during 2010 and, in the Proposed Amended Complaint, he

admits he is not owed any unpaid wages or overtime but instead only alleges claims for "gap

hours" and unpaid staff meetings.  Plaintiff Bayless is the only Named Plaintiff who asserts

claims for "gap hours" for a time period other than from July 2006 through November or

December 2009.

(d) Daniel Marr

During his deposition, Marr admitted that the Proposed Amended Complaint was

incorrect and testified that his regular schedule throughout his tenure with Defendants was four

shifts, Sunday brunch, which lasted approximately 5.5 to 6 hours, Wednesday and Friday dinner,

which lasted approximately 8.5 to 9 hours and sometimes as short as 6.5 hours, and Tuesday

lunch, which lasted approximately 5.5 hours.  (Marr Tr. 40-41, 88-89).  Further, and also in contravention of the Proposed Amended Complaint's allegations, Marr testified he was paid the tip credit hourly rate of pay beginning the week of July 12, 2009 (Marr Tr. 128).  Marr also testified that he does not remember how many staff meetings he attended and could not remember if the number was more than five.  (Marr Tr. 73).  Marr also testified that he never saw Defendants steal anyone's tips, that Defendants never stole his tips and that he was not aware of an instance where Defendants stole anyone's tips.  (Marr Tr. 84-85).

*(e) Marcus Calderon*

Calderon alleges that he was employed by Defendants from June 2009 through July 5, 2010.  (Proposed Amended Complaint ¶92).  During the earlier months of Calderon's employment, up until in or about September 2009, he was paid shift pay of up to $40 per shift, in addition to tips which could be in excess of $200 per shift.  (Calderon Tr. 22, 27, 40-41, 166).  During shifts when Calderon worked as a bartender he testified that he was responsible for tip allocation and distribution.  (Calderon Tr. 25-26).  Calderon testified that a senior server or the bartender was always in charge of the tip pool and, significantly – and in contravention of the allegations in Plaintiffs' Proposed Amended Complaint, that no one ever took his tips at any point during his employment with 44&X.  (Calderon Tr. 27).  Calderon also acknowledged at his deposition that 44&X's owners, Hart and Horowitz, never got involved in the tip pool. (Calderon Tr. 26-27).

Plaintiffs claim that they worked a substantial number of overtime hours for which they were not compensated, but  Calderon acknowledged at his deposition that it was rare for him to work over forty hours a week and he could not recall any occasion when he had done so.  (Calderon Tr. 101, 118-119).  While, Calderon claimed in the Proposed Amended Complaint (¶ 100) and in his Affidavit (¶ 20) that he was working on average fifty-seven (57) hours each

17

week, but acknowledged at his deposition that this was not the case. (Calderon Tr. 100, "Yes, definitely looking over this stuff, it looks way too high"). In fact, Calderon acknowledged at deposition that the total number of hours for which he claimed he was unpaid in his Affidavit was incorrect. (Calderon Tr. 109-110). Calderon also testified that his paychecks accurately reflected his tips, the number of shifts and which shifts he worked each week. (Calderon Tr. 93-94).

Plaintiffs' Proposed Amended Complaint details allegedly unpaid "gap time" and staff meetings which purportedly lasted in excess of two hours and for which employees were not paid. However, Calderon's deposition testimony dictates that he has no such claims. Specifically, Calderon testified that on the days when he worked a double shift he often went home or out to eat during such time, or would enjoy a duty-free family meal in the restaurant between shifts. (Calderon Tr. 49-50, 60-61, 103-104). In fact, Calderon acknowledged that before this lawsuit he never even heard of a "gap hour." (Calderon Tr. 104). Calderon also testified that other than one meeting, staff meetings were typically a half hour. (Calderon Tr. 104-106).

C.     **The Named Plaintiffs Will Not Fairly And Adequately Protect The Interests Of The Class.**

Rule 23(a)(4) requires the named representatives to "fairly and adequately protect the interests of the class." "There is an overlap between the typicality and adequacy requirements." Trawinski, 2012 U.S. Dist. LEXIS 183366 at *23. Accordingly, if Plaintiffs' claims are atypical of the class, adequacy of representation is also likely to fail. Id. "Where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, certification for the class is improper because he or she can no longer act in the best interest of the class." Id. at *24 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,

222 F.3d 52, 60 (2d Cir. 2000)).   "Regardless of whether the issue is framed in terms of the typicality of the representative's claims, Rule 23(a)(3), Fed. R. Civ. P., or the adequacy of its representation, Rule 23(a)(4), Fed.R.Civ.P., there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."   Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. N.Y. 1990).

As an initial matter, Bayless has yet to participate in this case.   As of the filing of this opposition, Bayless has not responded to any of Defendants' discovery requests despite Defendants' numerous deficiency notices.   Upon information and belief, Bayless no longer even lives in the New York City area.   (Correspondence from Plaintiffs' Counsel attached to the Ekelman Decl. as Ex. "H").   Accordingly, due to his disinterest, Plaintiff Bayless is not an adequate representative for the proposed class.

Further, each of the Named Plaintiff's claims are atypical of the proposed class and are likely to lead to unique defenses.   For instance, Plaintiff Walz is the only Plaintiff with a retaliation claim.   Plaintiff Walz also settled any and all claims he might have for unpaid wages prior to October 1, 2009.   Plaintiffs Marr and Calderon testified that they do not have a claim for tips, as they received all the tips they earned.   Likewise, Plaintiffs Calderon and Walz do not have claims associated with "gap time" work.   Further, Calderon testified that he could not remember one specific instance of working over forty hours a week, obviating any claim for unpaid overtime.   Plaintiff Bayless does not assert claims for unpaid wages for regular hours worked or for overtime.   He does not have claims associated with being paid shift pay. Accordingly, Plaintiffs cannot satisfy the adequacy of representation requirement of 23(a) for any of the proposed representatives.

D.   **Plaintiffs' Counsel Is Not Appropriate Class Counsel** .

Rule 23(a)(4) also requires Plaintiffs to show that their class counsel is qualified and capable of conducting the class litigation.  See Alcantara v. CNA Mgmt., 264 F.R.D. 61, 65 (S.D.N.Y. 2009).  In cases where class counsel engages in unethical conduct, courts have banned them from continuing to represent the class.  See Hamm v. TBC Corp., 345 Fed. Appx. 406, 408-411 (11th Cir. Fla. 2009) (affirming the district court's imposition of sanctions barring plaintiffs' counsel from representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs as a result of plaintiffs' counsel's conduct in violation of Florida's ethical rules including impermissibly soliciting potential opt-in class members.)

In the instant matter, there is evidence of Plaintiffs' counsel engaging in similar misconduct to that of class counsel in Hamm.  Specifically, Plaintiffs' counsel contacted multiple putative NYLL class members via Facebook.  (Correspondence from Plaintiffs' counsel listing the 43 individuals who received the messages and the content of the messages is attached to the Ekelman Decl. As Ex. "I").  Defendants submit that these Facebook communications constitute inappropriate solicitations in violation of Rule 7.3(a) of the New York Rules of Professional Conduct.[2]

---

[2]      Rule 7.3(a) of the Rules of Professional Conduct prohibits solicitation by interactive computer-accessed communication (unless the recipient is a close friend, relative, former client or existing client). In addition to banning certain solicitations outright, Rule 7.3 also creates strict rules regarding permissible solicitations.   Assuming *arguendo* that Mr. Harman's Facebook solicitation does not constitute an unlawful "real-time or interactive computer-accessed communication," it must comply with the regulations on solicitations provided for in Rules 7.3(c)-(i).   For example, a copy of Mr. Harman's solicitation "shall *at the time of its dissemination* be filed with the attorney disciplinary committee of the judicial district or judicial department wherein [Mr. Harman] maintains [his] principal office" and "shall be open to public inspection."   See NY CLS Jud. Appx. R. 7.3(c)(1) (emphasis added); 7.3(c)(4). Three days after the Facebook message was sent to Ryan Overburg, the Departmental Disciplinary Committee for the First Department confirmed that it had not received a copy of Mr. Harman's solicitation. Additionally, since Mr. Harman's solicitation was made by computer-accessed communication and directed to pre-determined recipients, it was required, and failed, to disclose "how [he] obtained the identity of the recipient and learned of the recipient's potential legal need" and to include the "name, principal law office address and telephone number of the lawyer or law firm whose services are being

Moreover, the Affidavits acquired by Plaintiffs' counsel and utilized in support of Plaintiffs' Motion include many inaccuracies and misrepresent the facts.  As addressed in detail above, there are glaring inconsistencies between the allegations in the Proposed Amended Complaint and Plaintiffs' Affidavits, on the one hand, and the deposition testimony of the two Plaintiffs who have been deposed thus far.  For example, Plaintiff Calderon repeatedly testified that his Affidavit was littered with inaccuracies.  (Calderon Tr. 98-104).  In fact, he admitted that he signed his Affidavit without reading a draft of the document, that he did not know what it was for and that he did not understand that it was the equivalent of a sworn statement.  (Calderon Tr. 86-87).  The testimony of Plaintiffs Marr and Calderon is not only strong evidence that Plaintiffs fail the commonality and typicality requirements of Rule 23(a) but also that Plaintiffs' counsel is guilty of, at best, repeated sloppy conduct.  In addition, Plaintiffs' counsel failed to appropriately advise Plaintiffs of their obligation to retain all electronic communications.  (Conference Transcript, 11-12, April 11, 2013, cited pages of which are attached to the Ekelman Decl. as Ex. "J.").  Accordingly, Plaintiffs' counsel is an inadequate representative of the proposed class, and, therefore, class certification must be denied.

## II.  PLAINTIFFS CANNOT SATISFY THE MORE RIGOROUS REQUIREMENTS OF RULE 23(b)(3).

Rule 23(b)(3) requires Plaintiffs to show  that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that class treatment would be superior to other available methods such as individual litigation.  Fed R. Civ. P. 23(b)(3).  Plaintiffs fail to meet this standard and thus their Motion must be denied.

---

offered."  See NY CLS Jud. Appx. R. 7.3(f); 7.3(h).  Accordingly, at the very least, it is clear that Mr. Harman's solicitation fails to comply with the strict guidelines of Rule 7.3.

A.     **Individual Questions Predominate Over Common Issues.**

In order to meet the "predominance" requirement of Rule 23(b)(3), a plaintiff must establish that there are issues in the class action that are subject to generalized proof, and that those issues predominate over those issues that are subject only to individualized proof. Dunnigan v. Metropolitan Life Ins. Co., 214 F.R.D. 125, 137 (S.D.N.Y. 2003); see also Myers, 624 F.3d at 547.  The predominance requirement is "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a)(2), see Dunnigan, supra, and is not met where the "resolution of individual claims for relief would require individual inquiries."  Id. at 138; Gardner v. Western Beef Properties, Inc., 07-CV-2345 (RJD)(JMA), 2011 U.S. Dist. LEXIS 146467, at *13 (E.D.N.Y. Sep. 26, 2011) ("The predominance inquiry is similar to the commonality inquiry, but it is a higher hurdle.")

In Comcast Corp. v. Behrend, the Supreme Court held that the respondents' class action was improperly certified under Rule 23(b)(3) as "questions of individual damage calculations would overwhelm questions common to the [proposed] class." 569 U.S. __ 2013, 2013 U.S. LEXIS 2544 (Mar. 27, 2013).  Behrend involved a proposed class of current and former Comcast subscribers who sought damages under four separate theories for alleged violations of federal anti-trust law.  Id. at **5-6.  As the lower court had only accepted one theory of liability and the plaintiffs' expert could not identify which damages were caused by which theory of liability, the Court denied class certification, finding that plaintiffs had not satisfied Rule 23(b)(3)'s predominance requirement and holding that class claims could not survive where "questions of individual damages calculations . . . overwhelm questions common to the class." Id. at *14.

Two days later, the district court in Roach v. T.L. Cannon Corp., applying Behrend, denied class certification in a wage and hour case brought under the NYLL as damages

22

were likely to be highly individualized and incapable of measurement on a classwide basis. 2013 U.S. Dist. LEXIS 45373, at *9 (N.D.N.Y. Mar. 29, 2013). The <u>Roach</u> Court rejected the plaintiffs' contention that under Rule 23, damages for spread of hours and off the clock work claims can be individualized and need not be susceptible to classwide resolution, finding this position, "in contravention of the holding in <u>Behrend</u>." <u>Id.</u> at 15. In particular, as to the off-the-clock claim, the Court held proof of damages was "highly individualized in that it is dependent on the circumstances of each individual employee" and, relying on <u>Behrend</u>, found "individual damage calculations will inevitably overwhelm questions common to this class." <u>Id.</u> at *15. Specifically, the Court found that damages were highly individualized where it was "dependent on the circumstances of each individual employee … [and] depending on the number of times each [individual] was in a situation falling within the scope of the claim."

The Supreme Court has indicated that it intended <u>Behrend</u> to apply to motions for class certification under Rule 23 in wage and hour cases, as on April 1, 2013, the Supreme Court remanded a wage and hour class action to the Seventh Circuit "for further consideration in light of <u>Comcast Corp. v. Behrend</u>." <u>RBS Citizens, N.A. v. Ross</u>, No. 12-165, 2013 U.S. LEXIS 2640, at *1 (Apr. 1, 2013). In <u>RBS Citizens, N.A.</u>, the Seventh Circuit Court of Appeals had affirmed the grant of class certification in a claim brought under Illinois state law. 557 F.3d 900 (7th Cir. 2012). There, bank tellers alleged, like here, that they worked off-the-clock and were not paid. The defendant argued individual damages issues would predominate and thus the case should not be certified under Rule 23(b)(3). The district court held this did not preclude certification because, "courts have not traditionally found individualized questions of damages to prevent class certification." <u>Ross v. RBS Citizens</u>, 2010 U.S. Dist. LEXIS 107779, at **22-23 (N.D. Ill. Oct. 8, 2010). The Seventh Circuit affirmed, but the Supreme Court vacated the

certification of the class "for further consideration in light of <u>Comcast</u>" signaling its disagreement with that finding. <u>RBS Citizens, v. Ross</u>, 2013 U.S. LEXIS 2640 (Apr. 1, 2013).

       Here, Plaintiffs' Motion should be denied based on <u>Behrend</u> as the Proposed Amended Complaint and the Motion fail to allege any facts establishing that it is plausible that damages for their claims could be determined on a classwide basis. Instead, as in <u>Behrend</u> and <u>Roach</u>, the damages will require individualized inquiries pursuant to a variety of different theories. For instance, the Court will need to determine, among other things, whether or not each putative class member: (1) received compensation at the tip credit rate of pay; (2) worked overtime; (3) worked "gap-hours"; (4) attended staff meetings; (5) was paid shift pay and, if so, whether such shift pay offset any potential wages owed; and (6) received all tips earned. Only once the answers to each of these questions is ascertained for each individual plaintiff will there then need to be an individualized determination of damages under each theory for each plaintiff. The Supreme Court's holdings dictate that a case with so many different moving parts is not amenable to class treatment. <u>See also</u> <u>Shayler</u>, <u>supra</u>, 2013 U.S. Dist. LEXIS 29540, at *28 (citing to <u>Dukes</u> and denying class certification as plaintiffs were not similar to one another and there were differences in where and when they worked and in what capacity). Accordingly, Plaintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement and their Motion should be denied.

     **B.**     **The Proposed Class Action Is Not Superior To Individual Actions.**

       The superiority prong of the Court's analysis under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. <u>See</u> <u>Dunnigan</u>, 214 F.R.D. at 142. The factors relevant to the "superiority" of the class action include: (a) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (b) the desirability or undesirability of concentrating the litigation of the claims

in the particular forum; and (c) the difficulties likely to be encountered in the management of the class action.  See id.  Significantly, a class action is not a "feasible, let alone superior method for the fair, efficient and manageable adjudication" of putative class members' claims if a court would be "required to conduct a series of mini-trials" as to each claim. Dunnigan, supra; see The Brd. Of Trustees of the So. Cal. IBEW-NECA Defined Contribution Plan v. The Bank of New York Mellon Corporation, 09 Civ. 6273 (RMB)(AJP), 2012 U.S. Dist. LEXIS 121711, at *22 (S.D.N.Y. Aug. 16, 2012).  ("The greater the number of individual issues … the less likely that superiority can be established") (internal quotations omitted).  As discussed above, in the present case, an individualized assessment of each putative class member's claims will be necessary and will force the Court to conduct separate mini-trials to determine the viability of each claim. Plaintiffs would be hard-pressed to establish that it would be superior and more efficient for the Court to try this case as a class action.  In fact, the low rate of participation in the FLSA collective action is indicative of the low level of interest that members of the putative class have in litigating this matter as a class action.  Accordingly, Plaintiffs have not met their burden of satisfying the superiority requirement of Rule 23(b)(3).

III.     **PLAINTIFFS FAIL TO PROPOSE A CLASS NOTICE.**

As Plaintiffs failed to append a proposed notice for dissemination to the proposed class, in the event the Court grants Plaintiffs' Motion, Defendants reserve the right to oppose the format and substance of any notice Plaintiffs later propose.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be denied.

25

Respectfully submitted,

JACKSON LEWIS LLP
666 Third Avenue
New York, New York 10017
(212) 545-4000

By:     S/ Felice B. Ekelman
Felice B. Ekelman (FE 5692)
Joanna S. Smith (JS6471)

ATTORNEYS FOR DEFENDANTS

Dated: April 18, 2013
New York, New York

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2013, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

WALKER G. HARMAN, JR.
PETER J. ANDREWS
THE HARMAN FIRM, PC
*ATTORNEYS FOR PLAINTIFFS*
200 West 57th Street, Suite 900
New York, New York 10019


____S/ Joanna S. Smith_____
Joanna S. Smith, Esq.