**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
TYLER WALZ, STEPHEN STACY a/k/a STEVE STACY,
FORREST BAYLESS, MARCUS CALDERON,                    12 CV 5800 (CM)(AJP)
DANNY MARR, Each Individually And On Behalf Of All
Other Persons Similarly Situated,

                *Plaintiffs*,

       -against-

44&X incorporated as 10th AVENUE GROUP, INC.,
SCOTT HART Individually, and
BRUCE HOROWYTZ a/k/a BRUCE HOROWITZ,
Individually,

                *Defendants*.
------------------------------------------------------------------------X

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT

---

**THE HARMAN FIRM, PC**
*Counsel for Plaintiffs*
Walker G. Harman, Jr. [WH-8044]
Peter J. Andrews [PA-3295]
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
pandrews@theharmanfirm.com

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................................... 1

II.  PROCEDURAL HISTORY ............................................................................................... 1

   A.   Filings, Discovery Proceedings and Motion Practice, Excluding Depositions. ................. 1

   B.   Depositions. ............................................................................................................. 4

   C.   The Late April/Early May 2013 Settlement In Principle. .................................................... 4

III. SUMMARY OF THE SETTLEMENT TERMS ................................................................. 5

   A.   The Settlement Amount. ........................................................................................... 6

   B.   Releases. ................................................................................................................. 6

   C.   The Third-Party Settlement Administrator. .................................................................. 6

   D.   Notice. .................................................................................................................... 7

   E.   Opt-Out Rights and Objections to Settlement. .............................................................. 8

   F.   Allocation Formula. ................................................................................................. 8

   G.   Attorneys' Fees and Litigation Costs. .......................................................................... 8

   H.   Enhancement Payments or Service Awards. ................................................................. 9

IV. ARGUMENT ....................................................................................................................... 10

   A.   Preliminary Approval of the Settlement Is Appropriate. ................................................. 10

   B.   The Settlement Is Fair, Reasonable, and Adequate. ....................................................... 12

      1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)... 12

      2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2). ............................. 13

      3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
         Responsibly (*Grinnell* Factor 3). ................................................................... 14

      4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).... 14

      5.   Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell*
         Factor 6). ........................................................................................................ 15

      6.   Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7). ................. 15

      7.   The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and
         the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9). ....................................... 16

   A.   The Proposed Notice Is Appropriate. ........................................................................... 17

      1.   The Proposed Notice Satisfies Due Process ................................................................ 17

      2.   The Notice Procedures and Award Distribution Process Are Appropriate. .................... 18

# TABLE OF AUTHORITIES

**Cases**

*Austrian & German Bank Holocaust Litig., In re*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000) *aff'd*,
 236 F.3d 78 (2d Cir. 2001) ................................................................. 13, 14, 15, 16

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ................................................................. passim

*Clark v. Ecolab*,
 07 CV 8623 (PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009).................. 10, 11

*Diaz v. E. Locating Serv.*,
 10 CV 4082 (JCF), 2010 WL 2945556 (S.D.N.Y. July 22, 2010) .......................... 8

*EVCI Career Colls. Holding Corp. Sec. Litig., In re*,
 05 CV 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)......................... 11

*Frank v. Eastman Kodak*,
 228 F.R.D. 174 (W.D.N.Y. 2005).................................................................. 11, 15, 16

*Gilliam v. Addicts Rehab. Ctr. Fund*,
 05 CV 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .......................... 8

*Han v. Sterling Nat'l Mortg.*,
 09 CV 5589 (JFB)(AKT) (E.D.N.Y. Aug. 9, 2012) ............................................. 8

*Joel A. v. Giuliani*,
 218 F.3d 132 (2d Cir. 2000) ....................................................................... 16

*Lynn's Food Stores v. United States*,
 679 F.2d 1350 (11th Cir. 1982) ................................................................. 11

*Maywalt v. Parker & Parsley Petroleum*,
 67 F.3d 1072 (2d Cir. 1995) ....................................................................... 10

*Michael Milken & Assocs. Sec. Litig., In re*,
 150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................. 17

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) ....................................................................... 16

*Top Tankers Sec. Litig., In re* ,
 06 CV 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008)....................... 11

*Traffic Exec. Ass'n, In re*,
 627 F.2d 631 (2d Cir. 1980) ....................................................................... 11

*Wal-Mart Stores v. Visa U.S.A.*,
 396 F.3d 96 (2d Cir. 2005) ................................................................. 10, 11

*Warfarin Sodium Antitrust Litig., In re*,
 391 F.3d 516 (3d Cir. 2004) ................................................................. 10, 14

*Willix v. Healthfirst,*
   07 CV 1143 (ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..................................8

*Wright v. Stern,*
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ..................................11

**Statutes**

28 U.S.C. § 1367..................................................................................2

29 U.S.C. § 216(b) ..............................................................................2

29 U.S.C. §§ 201–19 ..................................................................passim

N.Y. Lab. Law..........................................................................1, 2, 15

N.Y. Lab. Law § 191..............................................................................1

N.Y. Lab. Law § 2..................................................................................1

N.Y. Lab. Law § 215..............................................................................1

N.Y. Lab. Law § 651..............................................................................1

N.Y. Lab. Law § 653..............................................................................1

N.Y. Lab. Law § 663..............................................................................1

**Rules**

Fed. R. Civ. P. 23 ..........................................................................passim

Fed. R. Civ. P. 23(c)(2)(B)..................................................................17

Fed. R. Civ. P. 23(c)(3).......................................................................17

# I. PRELIMINARY STATEMENT

Subject to Court approval, Plaintiffs Tyler Walz, Stephen Stacy, Marcus Calderon, and Danny Marr *et al.* (the "Plaintiffs") and Defendants 10th Avenue Group, Inc. ("44&X"), Scott Hart, and Bruce Horowytz a/k/a Bruce Horowitz (the "Defendants," and together with Plaintiffs, the "Parties"), have settled this wage-and-hour Class and Collective Action for up to three hundred thousand dollars ($300,000) (the "Gross Settlement Fund"). The Parties' proposed written settlement agreement satisfies all of the criteria for preliminary approval by the Court.

Plaintiffs now respectfully request that the Court: (i) grant preliminary approval of the Settlement Agreement and Release (the "Settlement Agreement"), attached as *Ex. A* to the Declaration of Peter J. Andrews, dated June 20, 2013 (the "Andrews Decl."); (ii) approve the Notice of Pendency of Class Action and Proposed Settlement ("Proposed Notice"), attached as *Ex. B* to the Settlement Agreement; and, (iii) dismiss this action with prejudice.

# II. PROCEDURAL HISTORY

## A. Filings, Discovery Proceedings and Motion Practice, Excluding Depositions.

On July 27, 2012, the Plaintiffs filed a Complaint, styled as a class and collective action, against the Defendants in the Southern District of New York (Docket Entry 1).[1] The Complaint alleges Causes of Action for allegedly unpaid wages under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–19 ("FLSA") and the N.Y. LAB. LAW §§ 2, 191, 215, 651, 653, and 663. The Complaint also asserts, *inter alia*, claims under the FLSA and the N.Y. LAB. LAW for retaliation. Paragraphs 50–54 specifically allege acts of retaliation directed against Plaintiff Walz.[2]

---

[1] For the Court's convenience, the docket in this case is attached as *Ex. B* to the Andrews Decl.

[2] This was again asserted in the Plaintiff's Proposed Amended Complaint (Docket Entry 31-1).
[2] This was again asserted in the Plaintiff's Proposed Amended Complaint (Docket Entry 31-1).

In their Complaint, Plaintiffs asked that this action be certified as a class and collective action pursuant to the FLSA and FED. R. CIV. P. 23.

On Aug. 17, 2012, Defendants filed a Motion to Dismiss (Docket Entry 9). That Motion was granted in part and denied in part by the Court on Nov. 7, 2012 (Docket Entry 28). The Court ordered Plaintiffs to amend their Complaint and to file a Motion for Preliminary Collective Action Certification on or before Nov. 21, 2012.

Plaintiffs filed their Motion to Amend the Complaint on Nov. 21, 2012 (Docket Entry 30). The Proposed Amended Complaint maintained Causes of Action under both the FLSA and N.Y. LAB. LAW and also alleged that the Court has supplemental jurisdiction over the Plaintiffs' N.Y. LAB. LAW claims pursuant to 28 U.S.C. § 1367.

That same day, Nov. 21, 2012, as per the Court's order, Plaintiffs also filed a Motion for Preliminary Collective Action Certification pursuant to 29 U.S.C. § 216(b) (Docket Entry 33). That Motion only concerned the Plaintiff's FLSA claims, and not their N.Y. LAB. LAW claims.

At a Dec. 14, 2012 initial pre-trial conference, the Court issued a ruling on the contents of the Collective Action Notice and set the requirements for the Collective Action Notice to be sent out to Defendants' current and former waiters and bartender employees. The Court's ruling directed the parties to finalize a Notice document and disseminate it no later than Jan. 4, 2013. The Court then issued an Order confirming this ruling by writing (Docket Entry 48).

On Dec. 21, 2012, pursuant to the Court's ruling, Defendants produced to Plaintiffs a list of waiters and bartenders who worked or had worked for the Defendants. On Jan. 23, 2013, the Honorable Judge Colleen McMahon authorized the Notice to be resent via email to the individuals whose mail was returned, through a third party administrator (Docket Entry 56).

During a Feb. 14, 2013 conference with the Honorable Magistrate Judge Andrew J. Peck, the Court ordered the dissemination of the Notice via a third party to all individuals mentioned on the Dec. 21, 2012 list, provided that the Defendants represented that the list was complete and accurate. Counsel for the Plaintiffs reserved all rights in the event the list turned out to be incomplete and/or inaccurate. The Court also ordered a new thirty-day (30-day) opt-in period that would run from the day that Plaintiffs and the third-party administrator received a complete list of email addresses from Defendants. A third-party administrator was thereafter retained and compensated.

On Feb. 18, 2013, the Plaintiffs filed their Motion for Preliminary Class Action Certification Pursuant to FED. R. CIV. P. 23 (Docket Entry 88). The following day, the Parties entered into a Stipulation and Order Regarding a Litigation Stay and Settlement Conference (Docket Entry 61).

Between Feb. 22 and Mar. 27, 2013, S. Reece Scelfo, John Garrie Hoffman and, Kameron Ackerman filed Consents to become Party Plaintiffs under the FLSA (Docket Entries 64, 69–70). In fact, factual investigation subsequently revealed that the wage-and-hour claims of these three (3) individuals were outside of the three-year (3-year) period for potential FLSA liability (but not necessarily outside the six-year (6-year) period under the N.Y. LAB. LAW). The Settlement Agreement, discussed in detail *infra*, provides in pertinent part:

> Scelfo, Ackerman and Hoffman Consents Withdrawn. The force of this agreement is subject to the withdrawal with prejudice of the Consents to Opt-In to Plaintiffs' Collective Action under the Fair Labor Standards Act for the following individuals: (1) Stephen Reese Scelfo; (2) Kameron Ackerman; and (3) John Hoffman. As Class Members, Scelfo, Ackerman and Hoffman shall receive notice of the settlement.

Andrews Decl., *Ex. A*, § 2.13.

A settlement conference with Magistrate Judge Peck originally scheduled for Apr. 4, 2013 was canceled after the Magistrate concluded that the parties were too far apart as far as their settlement expectations (Docket Entry 74).

On Apr. 18, 2013, the Defendants submitted their papers in opposition to Plaintiffs' Motion for Preliminary Class Action Certification (Docket Entries 83–84). No reply papers were ever filed by the Plaintiffs because the Parties reached a settlement in principle in late April, as described below.

### B.  Depositions.

At each of the depositions that were taken, the deponents were represented by counsel. Defendants took three (3) depositions: (i) Plaintiff Marr on Dec. 18, 2012; (ii) Plaintiff Calderon on Apr. 10, 2013; and (iii) Plaintiff Stacy on Apr. 18, 2013. Plaintiffs took one (1) deposition, that of Defendant Hart on Apr. 25, 2013, which was also attended by Plaintiff Walz.

The deposed individuals and their counsel spent many hours preparing for and attending these deposition, which were each several hours in length. Various documents were introduced as exhibits at each deposition, and each witness was questioned extensively.

The parties were also planning to take several additional depositions, including the depositions of Dawn Lavigne, a potential witness who now resides in the Seattle area, as well as the depositions of Defendant Horowytz and Plaintiff Walz. The scheduling of Ms. Lavigne's deposition was the subject of numerous exchanges between the counsel. Had her deposition been taken, the parties would have had to travel to the Seattle area and would have expended thousands of dollars on travel, lodging, conference space, rental cars, and related expenses.

### C.  The Late April/Early May 2013 Settlement In Principle.

On Apr. 25, 2013, the same day that Defendant Hart was deposed for several hours, and immediately after, counsel for the Parties had a comprehensive discussion regarding the issues in

this case.  In the ensuing days, a settlement in principle was reached, which has now been reduced to the written Settlement Agreement.  Andrews Decl., *Ex. A*.  The Court was advised of the settlement in principle in early May 2013 (Docket Entries 85–86), and entered an Order concerning the settlement in principal on May 10, 2013 (Docket Entry 87).

On May 15, 2013, the Magistrate ordered the parties to submit their papers in support of their settlement by June 7, 2013 (Docket Entry 89).  Throughout early June, the parties negotiated the written Settlement Agreement, and requested and were granted two (2) extensions from the Court.  On June 13, 2013, the Magistrate endorsed a letter from Plaintiff's counsel directing that papers were to be submitted by today, Thursday, June 20, 2013 (Docket Entry 93).

In the meantime, the Court dismissed the claims of Plaintiff Forrest Bayless for failure to respond to Defendants' discovery requests and failure to comply with the Court's Apr. 4, 2013 Order (Docket Entry 91).  This was a material condition of the settlement in principle, and Mr. Bayless is no longer in this case.

### III.    SUMMARY OF THE SETTLEMENT TERMS

The Settlement Agreement, Andrews Decl., *Ex. A*, is intended to reflect the complete agreement between the parties.  For that reason, Plaintiffs do not see the need to repeat every single term and condition from that document in this Memorandum of Law.  However, they will highlight certain sections for the convenience for the Court.  To the extent that there are any errors or ambiguities in how the Agreement is described in this Memorandum, the Plaintiffs respectfully refers the Court to the actual written Settlement Agreement attached to the Andrews Decl.

### A.  The Settlement Amount.

The Settlement Agreement provides the total maximum amount to be paid out under the Settlement Agreement is the "Gross Settlement Fund" amount of three hundred thousand dollars ($300,000), which is inclusive of attorneys' fees, costs, and service or enhancement payments to Plaintiffs Walz, Stacy, Calderon, and Marr.  The Settlement Agreement provides, in pertinent part:

> Defendants agree create a "Gross Settlement Fund" in the maximum of $300,000 which shall fully resolved and satisfy any claim for (1) attorneys' fees, expenses and costs approved by the Court, (ii) fees to the Settlement Administrator, (iii) all amounts to be paid to all Authorized Claimants for releasing claims as set forth herein, (iv) the Walz Back Pay Award as provided in paragraph 3.3(A) below; and (v) any Court-approved Service Awards.

Andrews Decl., *Ex. A*.

The Settlement Agreement further provides that any uncashed Settlement Checks of Service Awards remaining in the Fund shall revert to Defendants within ninety (90) days after the mailing of the checks.

### B.  Releases.

The Settlement Agreement provides that, upon approval by the Court of the Settlement Agreement, each Class Member who does not timely opt-out pursuant to this Agreement "forever and fully releases Defendants from Released [FED. R. CIV. P.] 23 Class Claims."  It also provides that "each individual Authorized Claimant forever and fully releases Defendants from all Released Claims."  Sections 1.15 and 1.15 of the Settlement Agreement define the "Released Rule 23 Class Claims" and the "Released Claims."

### C.  The Third-Party Settlement Administrator.

The Settlement Agreement provides for a third-party settlement administrator.  This party shall be responsible for preparing and disseminating to Class Members the Class Notice and

Claim Forms, and receiving and reviewing the Claim Forms submitted by Class Members. The Settlement Agreement also states that the third-party administrator shall also be responsible for mailing the settlement checks to Authorized Claimants, Class Counsel, and Plaintiffs who receive Service Awards (the Plaintiffs also refer to these as Enhancement Payments).

The role of the third-party administrator is set out in detail in Section 2 of the Settlement Agreement (Initial Procedural Issues) and specifically in 2.3 (Responsibilities of the Settlement Administrator).

### D. Notice.

In summary, the Settlement Agreement provides that within ten (10) days of the filing of the Preliminary Approval Order, the Defendants' Counsel shall provide the third-party settlement administrator a mailing list of the Class Members, including physical addresses or email addresses to the extent that they are available. The third-party administrator will send out a Class Notice (attached to the Settlement Agreement as *Ex. B*). This Notice will inform Class Members about the Settlement and will also advise them of the opportunity to object, to opt-out, file a Claim Form to join in the settlement, and/or to appear at the Fairness Hearing. The Class Notice is to be mailed out within twenty (20) days of the entry of the Preliminary Approval Order by the Court. Each Class Member will then have forty-five (45) days from the date of initial mailing to return the Claim Form.

The details of the "Class Notice" are set out in Section 2.4 of the Settlement Agreement, and the procedures for the dissemination of the "Notice and Claims Forms to Class Members" are set out in Section 2.6. The paragraph above is intended to be a summary of these sections, for the convenience of the Court.

### E.  Opt-Out Rights and Objections to Settlement.

The Settlement Agreement provides that Class Members may opt-out of the Settlement Agreement by contacting the third-party administrator.  This is set out in detail in Section 2.7 (Class Member Opt-Outs).  Section 2.8 sets out the procedures for making objections to the Settlement Agreement.

### F.  Allocation Formula.

Under the Settlement Agreement, Class Members are to be paid pursuant to an allocation formula based on the number of workweeks in which each Class Member worked as a waiter and/or bartender at Defendants' 44&X restaurant.  The detailed formula is set out in Section 3.4(A) of the Settlement Agreement (Settlement Fund Allocation to Class Members).

### G.  Attorneys' Fees and Litigation Costs.

Consistent with the Settlement Agreement, Plaintiffs' counsel will apply for reimbursement from the Settlement Fund for their litigation costs, and or attorneys' fees equal to thirty-five and six tenths percent (35.6%) of the Gross Settlement Fund of three hundred thousand dollars ($300,000) (ninety-six thousand six hundred seventy-two dollars and seventy-four cents ($96,672.74) fees + nine thousand nine hundred eighty-one dollars and seventy-seven cents ($9,981.77) costs, totaling one hundred six thousand six hundred fifty-four dollars and fifty-one cents ($106,654.51)).[3]

---

[3] Attorneys' fees in this range are commonly awarded in wage-and-hour class and collective litigation of this type.  *See, e.g.*, *Willix v. Healthfirst*, 07 CV 1143 (ENV)(RER), 2011 WL 754862 at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for [thirty-three and one-third percent (33⅓%)] of the fund is reasonable and 'consistent with the norms of class litigation in this circuit.' ") (citing *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 CV 3452 (RLE), 2008 WL 782596 at *5 (S.D.N.Y. Mar. 24, 2008)); *Diaz v. E. Locating Serv.*, 10 CV 4082 (JCF), 2010 WL 2945556 at *7 (S.D.N.Y. July 22, 2010) (same). *Han v. Sterling Nat'l Mortg.*, 09 CV 5589 (JFB)(AKT) (E.D.N.Y. Aug. 9, 2012) (approving thirty-six percent (36%) to class counsel).

Plaintiffs' Counsel will petition the Court for this award of fees and expenses at the Fairness Hearing and Motion for Final Approval, as set out in Section 3.2 of the Settlement Agreement. Defendants have agreed that they will not oppose this application.

## H. Enhancement Payments or Service Awards.

Named Plaintiffs will apply for service awards, in recognition of the services they rendered on behalf of the Class. This application is addressed in Section 3.3 (Service Awards and Other Payments to Plaintiffs).

Named Plaintiffs Walz, Stacy, Calderon, and Marr have served the Class well by assisting with the in-depth factual investigation of the claims and by shouldering the risks. Plaintiffs' counsel was in constant communication with the Named Plaintiffs throughout the litigation process. Named Plaintiffs were prepared intensively for deposition. Every Named Plaintiffs except Mr. Walz was deposed, and Mr. Walz attended Mr. Hart's deposition and was seated right next to the examining attorney. Plaintiffs will move for Court approval of the service awards simultaneously with their Motion for Final Approval of the Settlement, as follows:

| | |
|---|---|
| Tyler Walz: | $20,000[4] |
| Stephen Stacy: | $7,500[5] |
| Danny Marr: | $7,500[5] |
| Marcus Calderon: | $7,500[5] |

In addition, Tyler Walz will receive twenty thousand dollars ($20,000) for back pay from the Settlement Fund to reflect the resolution of his retaliation claim.[6] Of course, Messrs. Stacy,

---

[4] *I.e.* twenty thousand dollars.

[5] *I.e.* seven thousand five hundred dollars.

Calderon and Marr will each receive an Individual Settlement Allocation from the Gross Settlement Fund as described in Section 3.4 of the Settlement Agreement.

## IV. ARGUMENT

### A. Preliminary Approval of the Settlement Is Appropriate.

The law favors compromise and settlement of class action suits. *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *see also* 4 Newberg on Class Actions § 11:41 (4th ed.) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum*, 67 F.3d 1072, 1079 (2d Cir. 1995). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Clark v. Ecolab*, 07 CV 8623 (PAC), 2009 WL 6615729 at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark*, 2009 WL 6615729 at *3 (internal quotation marks omitted).

Preliminary approval, which is what Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an

---

[6] Plaintiff Walz claims that he was retaliated against by Defendants after they were notified that he retained legal counsel. Defendants deny this claim.

informal presentation by the settling parties. *Clark*, 2009 WL 6615729 at *3 (citing *Newberg* § 11.25).

To grant preliminary approval, the court need only find that there is " 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as *indicia* of fairness); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CV 10240 (CM), 2007 WL 2230177 at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers Sec. Litig.*, 06 CV 13761 (CM), 2008 WL 2944620 at *3 (S.D.N.Y. July 31, 2008) (same).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

### B. The Settlement Is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) the ability of the defendants to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, the Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class

actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with dozens of potential class members.

Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense and delay. Additional discovery would be required to establish liability and damages. The parties would have conducted further depositions, including on the West Coast, the parties would have retained experts (such as accountants) and further witnesses as part of class discovery, Plaintiffs would have continued to pursued their motion for class certification pursuant to FED. R. CIV. P. 23 (which Defendants already opposed), and Defendants would have moved for class decertification, each at significant cost to the parties. A complicated trial would be necessary, featuring extensive testimony by individual Defendants and their employees, Plaintiffs, and other class members and possibly expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute. A trial of the damages issues, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice of the settlement and its details has not yet issued to the class. The Court should more fully analyze this factor after notice of the settlement issues and class members are given

the opportunity to opt out or object. At this early stage in the process, given that the four (4) Named Plaintiffs have agreed to the terms of the settlement, this factor weighs in favor of preliminary approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require many more hours of discovery work for both sides, the Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

The Parties' discovery here meets this standard. Plaintiffs' counsel conducted in-depth interviews with Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. Defendants deposed three (3) of the four (4) remaining Named Plaintiffs. Plaintiffs received and reviewed thousands of pages of documents, including pay records, time sheets, personnel documents, and corporate documents. Therefore, this factor favors preliminary approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted). A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of

proving liability under the FLSA and the N.Y. LAB. LAW, and in light of the defenses available to Defendants.

While Plaintiffs believe that they could ultimately establish Defendants' liability, to do so would require significant factual development. Plaintiffs' counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of preliminary approval.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of maintaining class certifications through trial is also present. In opposing final class certification, Defendants may argue that such individualized, fact-bound questions preclude class certification. Risk, expense, and delay permeate such processes. Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

### 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).

It is unclear whether Defendants are able to withstand a judgment greater than the Gross Settlement Amount of three hundred thousand dollars ($300,000). Even if Defendants are able to withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Plaintiffs' recognize that the restaurant at issue, 44&X, is a relatively small, local business, owned by the two individual Defendants, and not a large, complex corporate entity, and may not be able withstand a substantial judgment significantly in excess of three hundred thousand dollars ($300,000).

7. **The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

Defendants have agreed to settle this case for a substantial amount, three hundred thousand dollars ($300,000). This settlement amount represents a good value given the attendant risks of litigation, even though the recovery could be greater if Plaintiffs and the class succeeded on all claims at trial and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.' " *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.' " *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each class member will receive a payment that is proportional to the duration of his or her employment at Defendants during the class period. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Grinnell* factors all weigh in favor of granting preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination. Because the settlement, on its face, is " 'fair, adequate, and reasonable, and not a product of collusion,' " *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138–39 (2d Cir. 2000)), the Court should grant preliminary approval.

### A.  The Proposed Notice Is Appropriate.

#### 1.  The Proposed Notice Satisfies Due Process.

The content of the Proposed Notice, which is attached to the Settlement Agreement as *Ex. B*, fully complies with due process and FED. R. CIV. P. 23.  Pursuant to FED. R. CIV. P. 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)   that a class member may enter an appearance through an attorney if the member so desires;
> (v)    that the court will exclude from the class any member who requests exclusion;
> (vi)   the time and manner for requesting exclusion; and
> (vii)  the binding effect of a class judgment on members under [FED. R. CIV. P.] 23(c)(3). and FED. R. CIV. P. 23(c)(2)(B).

The Proposed Notice here satisfies each of these requirements.  Additionally, it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the scheduling of the final approval hearing.  Accordingly, the detailed information in the Proposed Notice is more than adequate to put Class Members on notice of the proposed settlement and is well within the requirements of FED. R. CIV. P. 23(c)(2)(B).  Courts have approved class notices even when they provided only general information about a settlement.  *See*, *e.g.*, *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").  The Proposed Notice far exceeds this bare minimum and fully complies with the requirements of FED. R. CIV. P. 23(c)(2)(B).

### 2. The Notice Procedures and Award Distribution Process Are Appropriate.

The Settlement Agreement provides that notice will be mailed to the last known address of each class member within twenty (20) days of this Court's Order Granting Preliminary Approval. Defendants will provide the Settlement Administrator with an electronic class list from which to send the Notice. The third-party administrator will take reasonable steps to obtain the correct address of any class member whose notice is returned as undeliverable and resend it to the most recent addresses available.

The Proposed Notice contains information about how to exclude oneself and/or object to the settlement. Class Members will have forty-five (45) days from the date of mailing to submit opt-out requests or object to the settlement. Within twenty (20) days of the Final Effective Date of the Settlement, the third-party administrator will mail class members their payments.

### CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that the Court:

(i)      Approve the Settlement Agreement attached as *Ex. A* to the Andrews Declaration;

(ii)     Approve the Parties' Proposed Notice attached as *Ex. A* to the Settlement Agreement; and,

(iii)    Dismiss this action with prejudice.

Dated: New York, New York  
      June 20, 2013

Respectfully submitted by:  
THE HARMAN FIRM, PC  
*Counsel for Plaintiffs*

_____s/_____  
Walker G. Harman, Jr. [WH-8044]  
Peter J. Andrews [PA-3295]  
200 West 57th Street, Suite 900  
New York, New York 10019  
(212) 425-2600  
wharman@theharmanfirm.com  
pandrews@theharmanfirm.com